COZEN O'CONNOR, P.C.
A Pennsylvania Professional Corporation
IRA G. MEGDAL, ESQUIRE
Attorney ID # 020071974
CHRISTOPHER RALEIGH, ESQUIRE
Attorney ID # 002651986
MARK A. LAZAROFF, ESQUIRE
Attorney ID # 051982013
Liberty View Suite 300
457 Haddonfield Road
Cherry Hill, NJ 08002-2220
(856) 910-5000

RECEIVED/FILED

2015 FEB -4  PM 2: 35

SUPERIOR COURT OF NJ

Attorneys for Plaintiff
South Jersey Resources Group, LLC

| | |
|---|---|
| SOUTH JERSEY RESOURCES GROUP, LLC | : SUPERIOR COURT OF NEW JERSEY<br>: LAW DIVISION<br>: ATLANTIC COUNTY |
| Plaintiff | : |
| vs. | : CIVIL ACTION |
| | : DOCKET NO. ATL-L-249-15 |
| ANTERO RESOURCES APPALACHIAN<br>CORPORATION | : |
| Defendant | : **COMPLAINT** |

Plaintiff, South Jersey Resources Group, LLC, by way of Complaint against Defendant

Antero Resources Appalachian Corporation, states as follows:

## NATURE OF ACTION

1.       This is a civil action for declaratory relief and money damages pursuant to the

New Jersey Declaratory Judgment Act, N.J.S.A. 2A:16-50, *et seq.*, or in the alternative, for

equitable relief in the form of reformation of the agreement between the parties.

2.       As set forth more fully below, SJRG seeks a declaration that a Market Disruption

Event, as set forth in the Base Contract between SJRG and Antero, has occurred, and respectfully

requests the Court to direct SJRG and Antero to negotiate a replacement Floating Price in

accordance with Section 14 of the Base Contract. SJRG further requests that in entering judgment, the Court award SJRG its attorneys' fees and costs and other such and further relief as the Court may deem just and proper, including the costs of prosecuting this action.

## VENUE AND JURISDICTION

3.      The jurisdiction of this Court is invoked pursuant to the New Jersey Declaratory Judgment Act, N.J.S.A. 2A:16-50, *et seq.*, to determine questions of actual controversy between and among the parties to this action.

4.      This Court has jurisdiction over the named Defendant because the Defendant has transacted business within New Jersey by, *inter alia*, conducing a series of acts and selling goods in New Jersey for the purpose of realizing pecuniary benefit; and has consented to the application of New Jersey law  pursuant to the terms of the contract between the parties.

5.      Venue is proper in this County pursuant to $\underline{R}$. 4:3-2 because Plaintiff resides and conducts business within this County.

## PARTIES

### A.      Plaintiff

6.      Plaintiff, South Jersey Resources Group, LLC ("SJRG") is a limited liability company organized and existing under the laws of the State of Delaware, with an office and principal place of business at 1 South Jersey Plaza, Folsom, New Jersey.  SJRG provides wholesale natural gas trading, sales, storage management, peaking services, transportation capacity and natural gas portfolio management services.

### B.      Defendant

7.      Defendant, Antero Resources Appalachian Corporation ("Antero"), is a corporation organized and existing under the laws of the State of Delaware, with its principal

place of business in Colorado. Antero is engaged in the exploitation, development and acquisition of natural gas.

## OVERVIEW

8.      As set forth in more detail below, SJRG and Antero entered into a contract whereby Antero agreed to supply, and SJRG agreed to purchase, specified quantities of natural gas over the term of the contract.

9.      The price of natural gas under the agreement between SJRG and Antero was linked to the benchmark indexed price of "Columbia Appalachia" natural gas, which is calculated and published by Platts McGraw Hill Financial ("Platts").

10.     Platts publishes numerous natural gas pricing indices that are widely used within the natural gas industry for similar benchmark pricing purposes.

11.     SJRG and Antero selected Columbia Appalachia as the "floating price" to which the price of natural gas under their contract was benchmarked, since the parties believed that the Columbia Appalachia index accurately represented the price of natural gas being sold by Antero to SJRG under the terms of the contract.

12.     SJRG began purchasing natural gas from Antero under the terms of their agreement in October 2011.

13.     It is believed that on or before April 1, 2014, Platt's informally ceased including certain gas when calculating the price of Columbia Appalachia, leading to significantly higher prices for Columbia Appalachia gas.

14.     In October 2014, Platts formally revised its definition of Columbia Appalachia and its methodology and formula for computing the price of Columbia Appalachia, which excluded from the Columbia Appalachia index the very natural gas SJRG was purchasing from Antero.

-3 -

15.     Due to the changes instituted by Platts with respect to the Columbia Appalachia index, the price of natural gas purchased by SJRG from Antero escalated in a way not contemplated by the parties.

## FACTS COMMON TO ALL COUNTS

16.     North American Energy Standards Board, Inc. ("NAESB") publishes a standard contract for the sale and purchase of natural gas titled "Base Contract for Sale and Purchase of Natural Gas."

17.     A standard NAESB agreement contract consists of: (a) a Base Contract for Sale and Purchase of Natural Gas which identifies the contracting parties and certain contract term elections; (b) General Terms and Conditions which sets forth the standard terms of agreement; and (c) an optional Special Provisions Addendum which modifies the standard terms to accommodate the parties' particular contracting needs.

18.     Following execution of the NAESB agreement, contracting parties use a transaction confirmation to confirm particular sales and purchases and which sets forth the price, delivery period, performance obligation, and delivery location of a particular volume of gas sold and purchased under the NAESB agreement.

19.     The NAESB-published base contract contemplates that the price of natural gas sold under its terms be pegged to the benchmark index of natural gas that best represents the price of natural gas being bought and sold by the parties; i.e. the index is representative of natural gas transactions occurring within the same geographic area, and time, as the natural gas purchased pursuant to the NAESB agreement.

20.     These benchmark indices are generally priced by taking the average prices of natural gas trades reported within a defined geographical area, during a defined period of time, to yield the benchmark price.

-4-

21.     The benchmark index price is referred to as the "Floating Price" in the NAESB base contract.

22.     SJRG and Antero entered into a standard NAESB Base Contract for Sale and Purchase of Natural Gas (the "Base Contract") on October 1, 2010 and attached hereto as <u>Exhibit A</u>.

23.     The terms of the individual purchases in dispute were memorialized in a transaction confirmation (the "Transaction Confirmation"), executed by SJRG on July 7, 2011 and attached hereto as <u>Exhibit B</u>.

24.     The Base Contract and Transaction Confirmation are hereinafter collectively referred to as the "Agreement".

25.     The Transaction Confirmation specified that SJRG would purchase from Antero, and Antero would deliver to SJRG at specified delivery points, 13,750 dekatherms per day ("dth/d") from October 1, 2011 to December 31, 2011; 32,500 dth/d from January 1, 2012 to March 31, 2012; 41,250 dth/d from April 1, 2012 to June 30 2012; and from July 1, 2012 to October 31, 2019, 55,000 dth/d in the months April to October of each year and 65,000 dth/d in the months of November to March.

26.     SJRG and Antero sought to peg the price of natural gas under the Base Contract to a natural gas benchmark index that would accurately include and represent the price of gas being purchased by SJRG from Antero.

27.     Platts computes and reports the prices of Columbia Appalachia gas in two indexes: "Inside FERC Columbia Appalachia" and "Gas Daily Columbia Appalachia" (collectively referred to herein as the "Columbia Appalachia index" or "Columbia Appalachia").

28.     SJRG and Antero determined that the Columbia Appalachia index, as defined, calculated and reported by Platts at the time the parties entered into the Agreement, met these

-5-

requirements and selected Columbia Appalachia as the "Floating Price" by which to peg the price of natural gas sold under the Base Contract.

29.    It was understood by SJRG and Antero that Platts' definition of Columbia Appalachia, and the formula for and method of computing the benchmark price of the Columbia Appalachia index, included natural gas trades occurring both within and outside a specific aggregation area known as the Interruptible Paper Pool ("IPP") location.

30.    It was also understood by the parties that the natural gas being purchased by SJRG from Antero could be shipped by SJRG to the IPP location upon receipt from Antero.

31.    The Transaction Confirmation reflected the intention of the parties that the price of natural gas sold from Antero to SJRG under the Base Contract would be pegged to the price of Columbia Appalachia gas as calculated and reported by Platts.

32.    With respect to the price to be paid by SJRG, the Transaction Confirmation provides:

> "**Pricing**: For first of month priced gas, Inside FERC Columbia Appalachia less 12 cents, and for daily priced gas, Gas Daily Columbia less 14 cents.  In the event that Seller fails to timely nominate gas as daily priced or first of the month priced as set forth above, all gas for the applicable month shall be deemed to be priced at Inside FERC Columbia Appalachia less 12 cents."

33.    Beginning in October 2011, SJRG began purchasing from Antero, and Antero delivered to SJRG, the quantities of natural gas specified in the Transaction Confirmation, and SJRG paid Antero in accordance with the agreed benchmark price set forth in the Transaction Confirmation.

34.     From October 2011 through about April 2014, the gas SJRG purchased from Antero could be shipped to the IPP location in accordance with SJRG's and Antero's intent and expectations at the time they entered into the Agreement.

35.     In April 2014, Columbia Pipeline Group announced operational changes limiting the ability of gas to flow to the IPP location. These curtailments resulted in an inability to ship Antero gas to the IPP location.

36.     Upon information and belief, following the changes implemented by Columbia Pipeline Group with respect to the flow of gas to the IPP location, Platts ceased including trades occurring outside of the IPP location when calculating the price of Columbia Appalachia.

37.     Beginning in or about the spring of 2014, the price of Columbia Appalachia began to deviate significantly higher than all other Appalachian-based trading indices, to the point where Columbia Appalachia was one of the most expensive benchmark indices for natural gas in the Northeast United States.

38.     SJRG communicated with Platts employees to determine why the price of Columbia Appalachia was deviating from other Appalachian-based trading indices.

39.     SJRG was informed by Platts employees that, prior to the rise in Columbia Appalachia pricing that began in or about the spring of 2014, Platts had averaged together all trades that met the definitional requirement for inclusion in the Columbia Appalachia index, including both those trades occurring at the IPP location and those not occurring at the IPP location.

40.     Through its discussions with Platts, SJRG became aware that following the curtailments instituted by Columbia Pipeline Group in or about April 2014, which limited the ability to ship Antero Gas to the IPP locations, Platts had ceased averaging all trades meeting the definitional requirement for inclusion in the Columbia Appalachia index and that, instead, Platts

-7-

was no longer including trades occurring outside of the IPP location, even though the trades met the definitional requirement for inclusion in Columbia Appalachia.

41.    In October 2014, Platts formally officially revised its definition of and methodology for computing the daily price of Columbia Appalachia gas.

42.    In November 2014, Platts further revised the methodology for computing the daily and monthly price of Columbia Appalachia.

43.    The changes made in Platts' methodology for computing the daily and monthly price of Columbia Appalachia gas excluded all natural gas trades that represented production points in Appalachia unless the trades were done at the specified IPP location.  Platts also changed the definition of the Columbia Appalachia index to include only natural gas that is traded in the IPP.

44.    The natural gas that SJRG purchases from Antero pursuant to the Agreement is not traded in the IPP location and SJRG is unable to ship this gas to the IPP location.

45.    Thus, after the aforementioned changes in computing the price of Columbia Appalachia gas went into effect, Columbia Appalachia ceased to include or adequately represent the price of the natural gas that SJRG was purchasing from Antero.

46.    In December 2014, Columbia established a new index, "Columbia Appalachia (Non-IPP)", which establishes a benchmark price for Columbia Appalachia natural gas traded outside of the IPP location, such as the natural gas SJRG purchases from Antero.

47.    As a result of: (i) Platts' informal exclusion of non-IPP gas when calculating the price of Columbia Appalachia from about April 2014 or before to October 2014; and (ii) the October 2014 formal change in methodology in calculating the Columbia Appalachia index; neither of which was contemplated by the parties, the price of natural gas to SJRG increased significantly causing SJRG to suffer great financial hardship.

-8-

48.     Section 14 of the Base Contract provides that if a "Market Disruption Event" has occurred, then the parties shall negotiate in good faith to agree on a replacement price for the Floating Price (in this case Columbia Appalachia), or on a method for determining the replacement price for the Floating Price.

49.     Section 14 of the Base Contract further provides that "if the parties have not so agreed on or before the second Business Day following the affected Day then the replacement price for the Floating Price shall be determined within the next two following Business Days with each party obtaining, in good faith and from non-affiliated market participants in the relevant market, two quotes for prices of Gas for the affected Day of a similar quality and quantity in the geographical location closest in proximity to the Delivery Point and averaging four quotes.  If either party fails to provide two quotes then the average of the other party's two quotes shall determine the replacement price for the Floating Price."

50.     The Base Contract defines a Market Disruption Event as any of the following events: (a) the failure of the index to announce or publish information necessary for determining the Floating Price (b) the failure of trading to commence or the permanent discontinuation or material suspension of trading on the exchange or market acting as the index; **(c) the temporary or permanent discontinuance or unavailability of the index;** (d) the temporary or permanent closing of any exchange acting as the index; **(e) both parties agree that a material change in the formula for or the method of determining the Floating Price has occurred**. [Emphasis added]

51.     Section 7.4 of the Base Contract provides that an invoiced party may in good faith dispute an invoiced amount if the invoiced party pays the amount it concedes to be correct and provides supporting documentation, acceptable in industry practice, to support the amount paid or disputed without undue delay.

-9-

52.     Section 7.4 of the Base Contract further provides that if the parties are unable to resolve a dispute relating to amounts due, either party may pursue any remedy available at law or in equity to pursue its rights.

53.     In discussions and correspondence with Antero, SJRG asserted that Columbia Appalachia had sustained a material change in the pricing of this index when Platts ceased to include non-IPP trades in calculating the price of Columbia Appalachia and thus Columbia Appalachia no longer met the original intentions of the parties, and that Columbia Appalachia as contemplated by the parties at the time they entered into the Agreement had been discontinued.

54.     SJRG further asserted that the modifications made in Platts' calculation of the Columbia Appalachia index constituted a Market Disruption Event under the terms of the Base Contract and attempted to negotiate a replacement price for Columbia Appalachia in conformance with Section 14 of the Base Contract.

55.     SJRG proposed that, with the discontinuance of Columbia Appalachia as contemplated by the parties, the TETCO Inside FERC index was the most accurate benchmark index published by Platts with respect to the location and pricing of the natural gas SJRG was purchasing from Antero.

56.     From October 2014 to date, Antero nevertheless continued to charge SJRG the monthly amounts set forth in the table attached hereto as Exhibit C, which were based upon the formally modified Columbia Appalachia index.

57.     From October 2014 to date, SJRG disputed a portion of the monthly charges rendered to it by Antero pursuant to Section 7.4 of the Base Contract.

58.     From October 2014 to date, SJRG has remitted monthly payments for the undisputed amounts, and withheld payments for the disputed amounts, as set forth in table attached hereto as Exhibit C.

-10-

59.    Since October 2014, SJRG has quantified its payments to Antero by applying the TETCO Inside FERC index to the monthly quantities of natural gas invoiced by Antero.

60.    Throughout October, November and December 2014, SJRG and Antero engaged in discussions as to how to resolve the pricing dispute.

61.    At various times, SJRG proposed that the parties utilize the provisions set forth in Section 14 of the Base Contract to negotiate and agree to a new Floating Price.

62.    Antero rejected SJRG's contention that a Market Disruption Event had occurred and has continued to invoice SJRG based upon the Columbia Appalachia index, as modified by Platts.

63.    SJRG and Antero have been unable resolve the pricing dispute.

**COUNT I**

**DECLARATORY RELIEF**

64.    SJRG repeats and realleges the allegations contained in paragraphs 1 through 63 as if the same were set forth at length herein.

65.    Pursuant to the terms of the Base Contract, if a Market Disruption Event occurs, SJRG and Antero are required to follow the procedures set forth above and in Section 14 of the Base Contract to determine a replacement price for Columbia Appalachia.

66.    Specifically, if a Market Disruption Event occurs, then SJRG and Antero "shall negotiate in good faith to agree on a replacement price for the Floating Price (or on a method for determining a replacement price for the Floating Price) for the affected Day, and if the parties have not so agreed on or before the second Business Day following the affected Day then the replacement price for the Floating Price shall be determined within the next two following Business Days with each party obtaining, in good faith and from non-affiliated market participants in the relevant market, two quotes for prices of Gas for the affected Day of a similar

-11-

quality and quantity in the geographical location closest in proximity to the Delivery Point and averaging the four quotes. If either party fails to provide two quotes then the average of the other party's two quotes shall determine the replacement price for the Floating Price."

67.     As set forth in Section 14 of the Base Contract, among other things, (i) the temporary or permanent discontinuance or unavailability of the index; or (ii) a material change in the formula for or the method of determining the Floating Price constitutes a Market Disruption Event.

68.     Upon information and belief, beginning in or about April 2014, Platts ceased averaging all trades meeting the definitional requirement for inclusion in the Columbia Appalachia index and that, instead, Platts was no longer including trades occurring outside of the IPP location, even though the trades met the definitional requirement for inclusion in Columbia Appalachia.

69.     Such a change in the calculation of the price of Columbia Appalachia constitutes a material change in the price of Columbia Appalachia, and thus constitutes a Market Disruption Event.

70.     Furthermore, in October 2014, Platts formally changed the formula for and method of determining the price of Columbia Appalachia gas to the extent that a material change occurred.

71.     This material change in determining the Floating Price constitutes a Market Disruption Event.

72.     Additionally, Platts' exclusion of all natural gas traded outside of the IPP in calculating the price of Columbia Appalachia and the creation of a new index to price that non-IPP gas, the Columbia Appalachia (Non-IPP) index, has led to the permanent discontinuance or

-12 -

unavailability of the Columbia Appalachia index as contemplated by SJRG and Antero at the time they entered into the Agreement.

WHEREFORE, Plaintiff SJRG respectfully requests that the Court enter judgment:

(a)    Declaring that a Market Disruption Event has occurred; and

(b)    Directing Antero to negotiate a replacement Floating Price with SJRG in accordance with Section 14 of the Base Contract.

(c)    SJRG further requests that in entering judgment, the Court Award SJRG its attorneys' fees and costs; and,

(d)    Such other and further relief as the Court may deem just and proper, including the costs of prosecuting this action.

## COUNT II

## BREACH OF CONTRACT

73.    SJRG repeats and realleges the allegations contained in paragraphs 1 through 72 as if the same were set forth at length herein.

74.    In the event that a Market Disruption Event occurs, Section 14 of the Base Contract requires that the parties utilize the methods set forth therein, and described above, to determine a replacement price for the Floating Price or a method for determining a replacement price.

75.    Section 14 of the Base Contract provides that "the temporary or permanent discontinuance or unavailability of the index" constitutes a Market Disruption Event.

76.    Platts': (i) failure to include non-IPP trades when calculating the price of Columbia Appalachia from about April 2014 to October 2014;  and (ii) revision of the definition of Columbia Appalachia and its revision of the formula for and the method of determining the price of Columbia Appalachia has resulted in the discontinuance and unavailability of Columbia

-13-

Appalachia as contemplated by the parties when they entered into the Agreement, and thus constitutes a Market Disruption Event, which, pursuant to the Agreement, requires the parties to act in accordance with the procedures set forth in Section 14 of the Base Contract to determine a replacement price for Columbia Appalachia.

77.     Despite the material changes described herein and the unavailability and discontinuance of Columbia Appalachia as contemplated by the parties, Antero refuses to comply with the procedures set forth in Section 14 of the Base Contract to determine a replacement price for Columbia Appalachia.

78.     Antero's subsequent refusal to proceed in accordance with Section 14 of the Base Contract in response to the occurrence of a Market Disruption Event constitutes a breach of the Agreement by Antero.

79.     SJRG is exposed to significant damages due to Antero's breach of the Agreement.

WHEREFORE, Plaintiff SJRG respectfully requests that the Court enter judgment in its favor and against the Defendant as follows:

(a)     Awarding SJRG damages, including compensatory and punitive damages, as well as pre-judgment and post-judgment interest in an amount to be determined at trial;

(b)     Directing the reformation of the Agreement between SJRG and Antero to conform to the intent of the parties;

(c)     Awarding SJRG the costs, expenses and attorneys' fees incurred in prosecuting this action; and

(d)     Such other relief as this Court deems just and proper.

-14-

## COUNT III

## BREACH OF CONTRACT

80.     SJRG repeats and realleges the allegations contained in paragraphs 1 through 79 as if the same were set forth at length herein.

81.     In the event that a Market Disruption Event occurs, Section 14 of the Base Contract prescribes that the parties must utilize the methods set forth therein, and described above, to determine a replacement price for the Floating Price or a method for determining a replacement price.

82.     Section 14 of the Base Contract provides that a Market Disruption Event has occurred if "both parties agree that a material change in the formula for or the method of determining the Floating Price has occurred."

83.     Upon information and belief, beginning in or about April 2014, Platts ceased averaging all trades meeting the definitional requirement for inclusion in the Columbia Appalachia index and that, instead, Platts only took into account trades occurring at the IPP location, even though non-IPP trades met the definitional requirement for inclusion in Columbia Appalachia.

84.     Platt's failure to include non-IPP trades in calculating the price of Columbia Appalachia constitutes a material change in the method of determining the Floating Price.

85.     Furthermore, in October 2014, Platts formally revised the definition of Columbia Appalachia and modified the formula for, and the method of determining, the price of Columbia Appalachia, to the extent that Columbia Appalachia now excludes, and is no longer a representative index for determining the price of, the natural gas purchased by SJRG from Antero.

86.     These material changes in the formula for, and the method of determining, the price of Columbia Appalachia constitute a Market Disruption Event which, pursuant to the

Agreement, requires the parties to act in accordance with the procedures set forth in Section 14 of the Base Contract to determine a replacement price for Columbia Appalachia.

      87.      Despite these material changes, Antero refuses to comply with the procedures set forth in Section 14 of the Base Contract to determine a replacement price for Columbia Appalachia.

      88.      Antero's subsequent refusal to proceed in accordance with Section 14 of the Base Contract in response to the occurrence of a Market Disruption Event constitutes a breach of the Agreement by Antero.

      89.      SJRG is exposed to significant damages due to Antero's breach of the Agreement.

      WHEREFORE, Plaintiff SJRG respectfully requests that the Court enter judgment in its favor and against the Defendant as follows:

      (a)      Awarding SJRG damages, including compensatory and punitive damages, as well as pre-judgment and post-judgment interest in an amount to be determined at trial;

      (b)      Directing the  reformation of the Agreement between SJRG and Antero to conform to the intent of the parties;

      (c)      Awarding SJRG the costs, expenses and attorneys' fees incurred in prosecuting this action; and

      (d)      Such other relief as this Court deems just and proper.

## COUNT IV

### MUTUAL MISTAKE

      90.      SJRG repeats and realleges the allegations contained in paragraphs 1 through 89 as if the same were set forth at length herein.

      91.      SJRG and Antero entered into the Base Contract in October 1, 2010 and executed the Transaction Confirmation on July 7, 2011.

-16 -

92.    At the time the Agreement was entered into, both parties believed that SJRG would be able to ship the gas it purchased from Antero to the IPP location after receipt from Antero.

93.    Furthermore, at the time the Agreement was entered into, both parties believed that Platts would continue to utilize the same formula when calculating natural gas prices for Columbia Appalachia, for the term of the Agreement, and that Columbia Appalachia would continue to include non-IPP gas, such that the index would continue to capture the supply of gas that SJRG contracted to purchase from Antero.

94.    It was the intention of both parties in selecting Columbia Appalachia as the Floating Price in the Base Contract that Columbia Appalachia would continue to be an accurate representation of the market price of natural gas actually being purchased by SJRG from Antero.

95.    SJRG and Antero were mutually mistaken in their belief that Columbia Pipeline Group would continue to permit SJRG to ship natural gas it purchased from Antero to the IPP location for the term of the Agreement.

96.    SJRG and Antero were mutually mistaken in their belief that Columbia Appalachia would continue to accurately capture the trades of natural gas purchased by SJRG from Antero, and thus the parties were mutually mistaken that Columbia Appalachia would remain an accurate benchmark index to utilize as the Floating Price for the term of the Agreement in accordance with the parties' intent.

97.    SJRG and Antero exercised reasonable care and all necessary due diligence when entering into the Agreement.

98.    The enforcement of the Base Contract and pricing terms set forth in the Transaction Confirmation against SJRG, despite SJRG's and Antero's mistaken reliance on the

continued adequacy of Columbia Appalachia to meet the intent of the parties is unconscionable and this Court must grant appropriate relief.

WHEREFORE, Plaintiff SJRG respectfully requests that the Court enter judgment in its favor and against the Defendant as follows:

(a)    Awarding SJRG damages, including compensatory and punitive damages, as well as pre-judgment and post-judgment interest in an amount to be determined at trial;

(b)    Directing the reformation of the Agreement thereto between SJRG and Antero to conform to the intention of the parties;

(c)    Awarding SJRG the costs, expenses and attorneys' fees incurred in prosecuting this action; and

(d)    Such other relief as this court deems just and proper.

## COUNT V

## UNILATERAL MISTAKE

99.    SJRG repeats and realleges the allegations contained in paragraphs 1 through 98 as if the same were set forth at length herein.

100.    At the time the Agreement was entered into, SJRG believed that it would be able to ship the gas it purchased from Antero to the IPP location upon receipt from Antero.

101.    Furthermore, at the time the Agreement was entered into, SJRG believed that Platts would continue to utilize the same formula when calculating natural gas prices for Columbia Appalachia, for the term of the Agreement, and that Columbia Appalachia would continue to include non-IPP gas, such that the index would continue to capture the trades of gas that SJRG contracted to purchase from Antero.

-18 -

102.    It was the intention of SJRG in selecting Columbia Appalachia as the Floating Price in the Base Contract that Columbia Appalachia would continue to be an accurate representation of the market price of natural gas actually being purchased by SJRG from Antero.

103.    SJRG was mistaken in its belief that Columbia Pipeline Group would continue to permit SJRG to ship natural gas it purchased from Antero to the IPP location for the term of the Agreement

104.    SJRG was mistaken in its belief that Columbia Appalachia would continue to accurately capture the trades of natural gas purchased by SJRG from Antero, and thus was mistaken that Columbia Appalachia would remain an accurate benchmark index to utilize as the Floating Price for the term of the Agreement in accordance with the parties' intent.

105.    SJRG exercised reasonable care and all necessary due diligence when entering into the Agreement with Antero.

106.    The enforcement of the Base Contract and pricing terms set forth in the Transaction Confirmation against SJRG, despite SJRG's mistaken reliance on the continued adequacy of Columbia Appalachia to meet the intent of the parties is unconscionable and this Court must grant appropriate relief.

WHEREFORE, Plaintiff SJRG respectfully requests that the Court enter judgment in its favor and against the Defendant as follows:

(a)     Awarding SJRG damages, including compensatory and punitive damages, as well as pre-judgment and post-judgment interest in an amount to be determined at trial;

(b)     Directing the reformation of the Base Contract and Transaction Confirmation between SJRG and Antero to conform to the intent of the parties;

(c)     Awarding SJRG the costs, expenses and attorneys' fees incurred in prosecuting this action; and

(d)     Such other relief as the Court deems just and proper.

## COUNT VI

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

107.    SJRG repeats and realleges the allegations contained in paragraphs 1 through 106 as if the same were set forth at length herein.

108.    At the time SJRG and Antero entered into the Agreement, both parties reasonably believed and expected that Columbia Appalachia would accurately represent the trades of natural gas purchased by SJRG from Antero and that Columbia Appalachia would remain an accurate benchmark index to utilize as the Floating Price in accordance with the parties' intent, for the term of the Agreement.

109.    At the time SJRG entered into the Agreement, both parties reasonably believed that Columbia Pipeline Group would allow SJRG to ship Antero gas to the IPP location for the term of the Agreement.

110.    Section 14 of the Base Contract is intended to address, among other conditions, a material change in the formula for, or the method of determining the price of, an index such as Columbia Appalachia, and the discontinuance of the Floating Price as it was contemplated by the parties when they entered into the Agreement.

111.    Antero has an express and implied obligation to negotiate with SJRG in good faith to resolve the current pricing dispute in conformance with the provisions set forth in Section 14 of the Base Contract.

112.    Despite the unavailability and discontinuance of Columbia Appalachia as contemplated by the parties and described herein, Antero refuses to proceed with the prescribed methods set forth in Section 14 of the Base Contract to determine a replacement price for Columbia Appalachia.

-20-

113.    Antero's refusal to resolve the current pricing dispute in conformance with the provisions set forth in Section 14 of the Base Contract constitutes not only an express breach of the Agreement, as set forth above, but also a breach of the covenant of good faith and fair dealing that is implied in every contract under New Jersey law.

WHEREFORE, Plaintiff SJRG respectfully requests that the Court enter judgment in its favor and against the Defendant as follows:

(a)    Awarding SJRG damages, including compensatory and punitive damages, as well as pre-judgment and post-judgment interest in an amount to be determined at trial;

(b)    Directing the reformation of the Agreement between SJRG and Antero to conform to the intent of the parties;

(c)    Awarding SJRG the costs, expenses and attorneys' fees incurred in prosecuting this action; and

(d)    Such other relief as this Court deems just and proper.

## COUNT VII

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

114.    SJRG repeats and realleges the allegations contained in paragraphs 1 through 113 as if the same were set forth at length herein.

115.    At the time SJRG and Antero entered into the Agreement, both parties reasonably believed and expected that Columbia Appalachia would accurately represent the trades of natural gas purchased by SJRG from Antero and that Columbia Appalachia would remain an accurate benchmark index to utilize as the Floating Price in accordance with the parties' intent, for the term of the Agreement.

-21-

116.    At the time SJRG entered into the Agreement, both parties reasonably believed that Columbia Pipeline Group would allow SJRG to ship Antero gas to the IPP location for the term of the Agreement.

117.    Section 14 of the Base Contract is intended to address, among other conditions, a material change in the formula for, or the method of determining the price of, an index such as Columbia Appalachia, and the discontinuance of the Floating Price as it was contemplated by the parties when they entered into the Agreement.

118.    Antero has an express and implied obligation to negotiate with SJRG in good faith to resolve the current pricing dispute in conformance with the provisions set forth in Section 14 of the Base Contract.

119.    Despite the occurrence of material changes with respect to the formula for, and the method of determining the price of, Columbia Appalachia, Antero refuses to proceed with the prescribed methods set forth in Section 14 of the Base Contract to determine a replacement price for Columbia Appalachia.

120.    Antero's refusal to resolve the current pricing dispute in conformance with the provisions set forth in Section 14 of the Base Contract constitutes not only an express breach of the Agreement, as set forth above, but also a breach of the covenant of good faith and fair dealing that is implied in every contract under New Jersey law.

WHEREFORE, Plaintiff SJRG respectfully requests that the Court enter judgment in its favor and against the Defendant as follows:

(a)    Awarding SJRG damages, including compensatory and punitive damages, as well as pre-judgment and post-judgment interest in an amount to be determined at trial;

(b)    Directing the reformation of the Agreement between SJRG and Antero to conform to the intent of the parties;

-22-

(c)      Awarding SJRG the costs, expenses and attorneys' fees incurred in prosecuting this action; and

(d)      Such other relief as this Court deems just and proper.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, notice is hereby given that Ira G. Megdal and Christopher Raleigh are designated trial counsel for plaintiff.

## CERTIFICATION PURSUANT TO RULE 4:5-1

I, Ira G. Megdal, counsel for plaintiff herein, hereby certify pursuant to R. 4:5-1 that :

1.      The matter in controversy is not the subject of any other action pending in any Court and is not the subject of a pending arbitration proceeding.

2.      No other action or arbitration proceeding is contemplated.

3.      There is no other party who should be joined in this action to my knowledge as of the present time.

-23 -

## JURY DEMAND

Plaintiff hereby demands trial by jury as to all issues.


Respectfully submitted,

COZEN O'CONNOR, P.C.

BY:

IRA G. MEGDAL, ESQUIRE
CHRISTOPHER RALEIGH, ESQUIRE
MARK A. LAZAROFF, ESQUIRE
Liberty View Suite 300
457 Haddonfield Road
Cherry Hill, NJ  08002-2220
(856) 910-5000
Attorneys for Plaintiff
South Jersey Resources Group, LLC


Dated:  February 3, 2015

-24 -